THE STATE OF TEXAS EX REL. ALICE WOOD V. DANIEL DEATON.

No. 850. Decided January 15, 1900.

**1. Custody of Child—Burden of Proof.**

The burden of proving that the best interests of a child will be subserved thereby is not upon the parent seeking to recover its custody, but upon the party denying such restoration of the child to the charge of its parent. (Pp. 246, 247.)

**2. Same.**

In habeas corpus brought by a mother to recover the custody of her minor child, which she had relinquished to another who had adopted it, a finding that the child's interest would be as well if not better subserved by remaining with the adoptive parent did not justify a refusal to restore it to its mother. (Pp. 246, 248.)

**3. Same—Case Explained.**

The case of Legate v. Legate, 87 Texas, 248, shown not to conflict with the ruling herein on the burden of proof. (Pp. 246, 247.)

ERROR to the Court of Civil Appeals for the Second District, in an appeal from Wise County.

Alice Wood brought habeas corpus to recover the custody of her child from Daniel Deaton. She appealed from a judgment for defendant, and on its affirmance obtained a writ of error.

*Clendenin & Buckaler,* for plaintiff in error.—The parol agreement by which the custody of the child was transferred to respondent is void; and the parent is entitled to recover the custody of the child notwithstanding the agreement, unless it appears from the evidence that the interest of the child would be better subserved by permitting it to remain in the custody of those to whom it has been intrusted by the parent. State v. Baldwin, 45 Am. Dec., 399; People v. Mercein, 38 Am. Dec., 644; Schoul., Dom. Rel., sec. 251.

The parent is entitled to recover the custody of the child notwithstanding a parol agreement that another may have its permanent custody, unless the evidence shows that the interests or the happiness of the child would be sacrificed by the return to the parent. Weir v. Marley, 12 S. W. Rep., 798; State v. Libbey, 82 Am. Dec., 223.

The presumption of the law is that it is to the interest of the child to be in the custody of its parent. While the parent may, by his inability or failure to provide for his child, forfeit his right to the cus-

tody, because the interest of the child demands it, yet, upon the trial of the issue of forfeiture he is entitled to this presumption, and unless the interest of the child does demand it, such forfeiture can not take place. He can not deprive himself of this right of custody, which is the concomitant of a personal trust imposed upon him by the law of nature as well as by positive enactment, by contract. Weir v. Marley, 12 S. W. Rep., 798.

All of the cases, including the Legate case, hold that the agreement is no bar to recovery of possession by the parent. It served no other purpose than to give the respondent lawful possession of the child for the time being, and if the opinion of the trial court is correct, any person who may get possession of a child may retain it until the parent is able to prove to the satisfaction of the court that the interest of the child requires the return to him.

*Bullock & Tankersley*, for defendant in error.—While it is a presumption of law "that the best interest of the child will be subserved by allowing it to remain in the custody of the parents," there is nothing found in the records in this case or in the conclusions of fact and law found by the trial court, from which it may be inferred that the trial court did not, in this case, give such presumption its full force and effect.

It was not a question alone of ability of the appellant to support her child, but it having been proven that she had voluntarily transferred and delivered the child into the possession of appellee and his wife, and had herself been instrumental in creating new domestic relations with the child, such possession and custody by appellee become prima facie legal, and the only question to be determined by the trial court was how, under all the evidence before him, could the interest of the child be best subserved.

It having been proven that appellant had voluntarily relinquished the custody of her child to appellee and his wife, who had cared for it for four years, and mutual attachments had been created between the child and its foster-parents, and the trial court, having heard all the evidence and adjudged that the child should remain in the possession of the appellee and his wife, the judgment of the trial court should not be disturbed unless it should appear that the interest of the child would be promoted thereby. Legate v. Legate, 87 Texas, 248.

BROWN, ASSOCIATE JUSTICE.—Alice Wood, joined by her husband, brought this action by writ of habeas corpus to recover possession of her minor child by a former husband. The case was tried before the judge without a jury, who filed the following conclusions of fact:

"1. I find that Alice Wood, the applicant herein, is the mother of Austin Dillard, a minor about six years of age; that when said Austin Dillard was about two years of age, his mother, the applicant herein, who was then Alice Dillard, was a widow without a home, and without

means of support, went to live with an uncle, who had a large family of small children; that her said uncle was not so situated that he could furnish a home to applicant and her child, Austin Dillard, but could and would furnish a home to applicant if she could and would find a home for the said Austin Dillard in some other family; that the applicant then applied to Daniel Deaton, the respondent herein, whose wife was a distant relation to applicant, to take said child and raise and care for it as if it was his own child; that applicant then promised and assured the respondent that the care and custody of said Austin should continue until said child reached his majority,—applicant promised at the time that she would never take from respondent said child; that with these assurances, the respondent, after consulting with his wife, agreed with applicant that he and his wife would take said child, and raise and care for it as their own child; and that thereupon respondent and his wife took said child, and have ever since had the care and custody thereof: that it was about four years ago when respondent took said child.

"2. I find that since the said Deaton has had the care and custody of said child, he and his wife have looked after and cared for said child with as much care as could its natural parents have done; that they have supplied all the wants of said child during this time; that both the applicant and his said wife are very much attached to said child, and appear to be as much attached to the child as if it was their own; and that said child is as much attached to respondent and his wife as if they were his natural parents.

"3. That respondent and his wife have been married about eleven years, and never had any children; that respondent and his wife are both good, moral people, and suitable to have the care and custody of said child; that respondent is about 35 years of age and his wife about 30 years of age; that they are industrious and economical; that while respondent and his said wife are not possessed of very much property, they have a home of about 100 acres, and personal property sufficient to live comfortably and carry on said farm, and which, with their habits, is sufficient to enable them to properly raise, care for, and educate said child.

"4. I find that about eight months ago the applicant herein, the mother of the said Austin Dillard, was married to W. M. Wood; that from the time the said child was left by applicant with respondent until her marriage, she never sought to regain the care and custody of said child; that during said time she lived with her uncle as one of his family and could not have taken her child there to live; that soon after the marriage of applicant, she applied to the said Daniel Deaton, respondent herein, for the custody of her said child, which was refused, and this proceeding was commenced to recover the possession and care of said child.

"5. That the said W. M. Wood, the present husband of applicant, is a man about 50 years of age; is a man of good moral character, and

possessed of a good home of about 200 acres, and stock and personal property sufficient and ample to work and manage said farm; that said Wood is an industrious and economical man; that applicant herein, Mrs. Alice Wood, is a lady of good moral character and standing, is about 27 or 28 years of age; and that she and her present husband are suitable persons to have the care and custody and raising of the child in controversy; that applicant is very much attached to her said child, as much so as is ordinarily the case, and is much grieved at not being able to regain the possession of her said child.

"6. That applicant's husband, the said W. M. Wood, is very anxious for his wife, the applicant herein, to have the possession of her said child, and is willing and will, if his wife should gain the custody and care of said child, do what he can to properly raise and educate said child; that applicant's husband has property sufficient to enable them to properly care for, maintain, and educate said child; that applicant has but little property; that the applicant is the second wife of the said W. M. Wood; that the said Wood has three children by his former wife, all living and grown, and not living with their father, as they are married and have homes; that the children of the said Wood have a community interest in a great part of the property now in possession of the said Wood, and herein referred to as being owned by the said Wood; that the respondent and his wife would be much grieved if they should be compelled to surrender the possession and care of said child to anyone else; that said respondent and his wife have adopted said child in the manner prescribed by the statute of Texas. I find that the interest and welfare of the child, Austin Dillard, will be as well, if not better, subserved by remaining with the respondent and his wife, who have adopted it as their own, than if his possession and custody were given to his mother, the applicant herein."

Judgment was rendered in the District Court against Mrs. Wood, from which she appealed; and the Court of Civil Appeals affirmed that judgment.

Under the facts found by the trial court, there is no question as to the moral or other qualifications of the plaintiff for the discharge of her parental duties to the child, Austin Dillard, but the trial court, upon the facts, expressed the conclusion "that the interest and welfare of the child, Austin Dillard, will be as well, if not better, subserved by remaining with the respondent and his wife, who have adopted it as their own, than if his possession and custody were given to his mother, the applicant herein." The court seems to have acted upon the idea that the burden of proof rested upon the applicant, Mrs. Wood, to establish the fact that the best interest of her child would be subserved by restoring him to her possession, and the Court of Civil Appeals reluctantly affirmed the judgment of the trial court under the belief that the case of Legate v. Legate, 87 Texas, 248, established that as a rule of decision in such cases. The vigorous language and strong reasoning of the learned judge who wrote the opinion in that case

would justify the conclusion reached by the Court of Civil Appeals, but a careful examination of the case will show that the question was not decided nor intended to be decided, but was expressly waived by the court. The third certified question stated, in substance, that both the applicant and the respondent were equally qualified to care for the child, and, upon that state of facts, the Court of Civil Appeals propounded this question: "Should the child be taken from the custody of the respondent and given to the natural father and mother?" After laying down the general principles of law applicable to questions of this character, this court said: "Since the third question above propounded by the Court of Civil Appeals does not find or state the question of fact as to whose custody would be to the best interest of the infant, under the evidence, we can not answer the question either in the affirmative or in the negative." The court then referred to a number of authorities as discussing the rules applicable to the question, among others, the case of Weir v. Marley, 99 Missouri, 484, same case, 12 Southwestern Reporter, 798, in which the following language is used upon this identical question: "What is for the best interest of the infant is the question upon which all cases turn at last, whatever may be said in the opinion about contracts; and the answer returned is that the custody of the child is by law with the father, unless it appears by satisfactory evidence that the best interest of the child demands that he should be deprived of that custody, and upon him who so avers devolves the burden of proof,—the presumptions are against it." If this court had intended to decide that the burden of proof rested upon the parent, there was no reason why it should not have answered the question propounded, and it would not have referred the Court of Civil Appeals to the case of Weir v. Marley as furnishing a proper rule to guide it in deciding the issue.

God, in his wisdom, has placed upon the father and mother the obligation to nurture, educate, protect, and guide their offspring, and has qualified them to discharge those important duties by writing in their hearts sentiments of affection and establishing between them and their children ties which can not exist between the children and any other persons. Especially is this the case with the mother. Parents can not divest themselves of the obligation imposed upon them by their Creator, but when they become disqualified for a proper discharge of such duties, civil government has the right, in the interest of the child, to provide for its proper nurture and education.

When the parent has parted with the possession and control of his or her child and seeks to regain that possession through the courts, it becomes the duty of the court, in a proper case, to protect the child against the evil results that may flow to it from an improper direction through incompetent or disqualified parents. The rule which should guide the court is aptly expressed in the case of Weir v. Marley, which we have quoted, and is supported by the case of State v. Richardson, 40 New Hampshire, 275, in this language: "The discretion to be

exercised is not an arbitrary one, but, in the absence of any positive disqualification of the father for the proper discharge of his parental duties, he has, as it seems to us, a paramount right to the custody of his infant child, which no court is at liberty to disregard. And while we are bound also to regard the permanent interests and welfare of the child; it is to be presumed that its interests and welfare will be best promoted by continuing that guardianship which the law has provided, until it is made plainly to appear that the father is no longer worthy of the trust. The breaking of the ties which bind the father and the child can never be justified without the most solid and substantial reasons. Upon the father, the child must mainly depend for support, education, and advancement in life, and as security for this he has the obligation of law as well as the promptings of that parental affection which rarely fail to bring into the service of the child the best energies and the most thoughtful care of the father. In any form of proceeding, the sundering of these ties will always be approached by the courts with great caution, and with a deep sense of responsibility." The rule laid down is sustained by the authorities, of which we cite the following: Richards v. Collins, 45 N. J. Eq., 286; Miller v. Wallace, 76 Ga., 479; State v. Banks, 25 Ind., 500; Rust v. Vanvacter, 9 West Va., 612; State v. Libbey, 44 N. H., 324; Moore v. Christian, 56 Miss., 408; 31 Am. Rep., 375; Chapsky v. Wood, 26 Kan., 653; In the matter of Bernice S. Scarritt, 76 Mo., 577.

The facts found do not establish with that certainty which the courts must require that the interest of the child, Austin Dillard, or of society itself, demands that he shall be taken from his mother and continued in the possession of another. The District Court erred in giving judgment remanding the child to the custody of the respondents and the Court of Civil Appeals erred in affirming that judgment, for which error the judgments of both courts are reversed and judgment is here entered that the child, Austin Dillard, be delivered to his mother, Alice Wood, and that the plaintiff in error recover of the defendant in error all costs of this proceeding.

*Reversed and rendered for plaintiff in error.*